


**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

| | | |
|---|---|---|
| **MICHAEL DAVID BUSBY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 6:11-cv-04180-SLB** |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Plaintiff Michael David Busby ("Plaintiff") brings this action pursuant to Title II of Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration[1] ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB"). *See also* 42 U.S.C. § 405(g). After careful review, the court finds that the decision of the Commissioner is due to be affirmed.

## I. Proceedings Below

Plaintiff applied for DIB on September 25, 2009 alleging disability beginning January 3, 2008[2] due to back pain, leg pain, bursitis, diabetes, high blood pressure, and sleep apnea. [R. 112-118; 149]. The Social Security Administration denied Plaintiff's claim on January 19, 2010. [R. 61-

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Therefore, she should be substituted for Commissioner Michael J. Astrue as Defendant in this suit. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

[2] The ALJ clarified during the hearing that the earliest date he could find disability would be September 4, 2008 because Plaintiff had filed an initial application that was not denied until September 3, 2008. [R. 33]. The ALJ then amended the alleged onset date to September 4, 2008. [R. 33].

65]. Plaintiff requested [R. 69] and received a hearing before and administrative law judge ("ALJ"). The ALJ held a hearing on April 13, 2011. [R. 28-52]. The ALJ issued a decision on May 4, 2011 denying disability benefits. [R. 13-27]. On November 11, 2011, the Appeals Council denied Plaintiff's request for review [R. 1-7], making the Commissioner's decision final and a proper subject of this court's judicial review. *See* 42 U.S.C. § 405(g).

**A. Hearing Testimony**

Plaintiff was 49 years old at the time of the hearing and had a ninth grade education. [R. 39]. He last worked as a front-end loader operator for Alabama Coal and Recovery before he was laid off in late 2007. [R. 34-35]. Plaintiff had received unemployment benefits for about a year and a half but those benefits terminated prior to the hearing. [R. 36]. Plaintiff lived in a mobile home with his wife, adult son, and brother. The family's only income was Plaintiff's wife's supplemental security income ("SSI") benefits. [R. 36].

When asked by the ALJ whether he could return to work at the coal company if they offered him a position, Plaintiff responded that he did not believe he could. [R. 37]. According to Plaintiff, his medical condition had worsened since he was laid off. [R. 37]. Plaintiff stated that he was experiencing numbness on his left side that did not exist when he was working. [R. 45]. Plaintiff testified that he experiences swelling in his legs every day. [R. 46]. Plaintiff further stated that he did not believe he could stand for two hours in an 8-hour work day. [R. 47].

Plaintiff testified that he had taken his diabetes medication but sometimes forgot to take his blood pressure medication. [R. 38]. Plaintiff stated that if he does not take his diabetes medication his vision gets blurry and he "want[s] to sleep all the time." [R. 39]. Plaintiff testified that he checked his blood sugar about two to three times a week. [R. 39]. Plaintiff stated that his bursitis

in his shoulder caused pain when he would try to use a hammer or raise his arm. [R. 43]. In response to a question from his attorney, Plaintiff testified that his daily pain was an eight on a ten point scale. [R. 44]. He stated that he has trouble sleeping and has to sit up on the side of the bed at night to take pressure off of his back. [R. 44].

Regarding his daily activities, Plaintiff testified that he helps wash dishes but has to pull up a chair to the sink in case his back starts hurting. [R. 40]. Plaintiff stated that he drives every day. He was currently taking his brother to dialysis three times a week. [R. 40]. Plaintiff testified that he can stand or sit for about ten to 15 minutes before he has to get up and move around. [R. 40]. According to Plaintiff, he could walk about 40 yards before his legs would start "throbbing." [R. 41]. Plaintiff mows the lawn on a riding lawn mower but testified that he works for about ten to 15 minutes before he has to stop and walk around. [R. 42]. Plaintiff testified that he had smoked a pack and a half of cigarettes a day for over thirty years. [R. 43].

A vocational expert ("VE") also testified at the hearing. The VE stated that Plaintiff's past relevant work included crane operator and front-end loader operator. In response to a hypothetical from the ALJ, the VE testified that someone of Plaintiff's age, educational background, work experience, and residual functional capacity ("RFC") could not perform his past relevant work. [R. 48-49]. However, the VE testified that other jobs existed in the national economy that such an individual could perform, including: product assembler, vacuum frontal assembler, food inspector, and packer. [R. 50]. In response to a question from Plaintiff's attorney, the VE testified that if Plaintiff experienced pain at an eight out of ten level, this type of moderate to severe pain would preclude employment. [R. 51].

### B. Medical Evidence

#### 1. Treatment History

From December 2005 through August 2008, Dr. Mike Brasfield treated Plaintiff for a variety of medical problems, including his diabetes and back pain,. On February 6, 2006, Plaintiff complained to Dr. Brasfield of back pain and numbness in his left leg. [R. 265]. Plaintiff also reported he was experiencing "a lot of headaches." [R. 265]. Dr. Brasfield's notes under the "Assessment" heading of the treatment page are difficult to read. However, Plaintiff saw Dr. Brasfield again on March 3, 2006. [R. 263]. He complained of "burning" and headaches. [R. 263]. The remainder of Dr. Brasfield's notes from his examination and assessment are once again difficult to interpret. When Plaintiff returned on April 20, 2006, he wished to discuss weight loss surgery due to his health problems. [R. 264]. Treatment notes are again difficult to read; but, it appears as though Dr. Brasfield referred Plaintiff to a weight loss surgery center. [R. 264]. On August 4, 2006, Plaintiff saw Dr. Brasfield again and complained of back pain. [R. 261]. Again, treatment notes are substantially illegible. However, Dr. Brasfield indicated that Plaintiff was obese and suffering from sleep apnea. [R. 261]. On March 19, 2007, Plaintiff complained of back pain and indicated he had to take extra pain pills due to increased pain. [R. 253]. Although examination notes are difficult to read, Dr. Brasfield made comments about Plaintiff's L5 and L6 lumbar discs. [R. 253]. Plaintiff saw Dr. Brasfield six times over the course of the next year. [R. 241-252]. He complained of back pain during each visit. [R. 241-252]. Physical examination notes during this time revealed no clubbing or cynosis. Plaintiff demonstrated a normal gait and station during these visits.

Plaintiff submitted results of various tests related to his back pain. Plaintiff had a lumbar x-ray and MRI on January 24, 2006. [R. 181; 183]. The x-ray showed mild disc narrowing and the

MRI showed mild facet degenerative changes. [R. 181; 183]. Another x-ray taken on January 12, 2007 showed mild degenerative changes manifested by marginal osteophyte formation. No fractures were seen. [R. 275]. A CT scan performed on February 8, 2007 revealed multilevel disc and facet degenerative changes with narrowing of the thecal sac and foraminal. [R. 274]. A March 3, 2008 x-ray showed mild lower lumbar spondylosis. [R. 272].

Dr. Terry Bentley treated Plaintiff for sleep apnea from July 2005 through June 2006. [R. 206-233]. After a sleep study, Dr. Bentley diagnosed Plaintiff with obstructive sleep apnea. He began treatment and during a follow-up visit in June 2006, Dr. Bentley indicated that Plaintiff had responded well to BIPAP with a full face mask. [R. 226-227; 207]. During the three documented visits, Dr. Bentley discussed Plaintiff's tobacco use, which included smoking two packs of cigarattes per day. [R. 206-207; 226-227; 229]. Plaintiff demonstrated an interest in and Dr. Bentley instructed him on smoking cessation.

From March 2009 through March 2011, Plaintiff saw various providers at Capstone Rural Health Center. [R. 313-335; 371-397]. During his first visit on March 27, 2009, Plaintiff complained of high blood pressure, back pain, and anxiety or depression. [R. 314-315]. He stated that since losing his insurance in 2008, he had trouble getting his medications. On examination, Plaintiff walked with a normal gait and no tenderness was present over his spine. Plaintiff demonstrated a full range of spinal and hip motion without pain. His motor strength was 5/5 in both lower extremities. [R. 315]. In April, June, and October 2009, Plaintiff reported back pain but examination notes contain no musculoskeletal findings. [R. 318-326]. During a visit in August 2010, Plaintiff demonstrated some tenderness to his lower back on palpation. [R. 388]. According to treatment notes from September 2010, Plaintiff's back pain was better with Naproxen but he

continued to have pain. He denied other problems or concerns. [R. 385]. Examination findings are benign. [R. 385-386]. In December 2010, Plaintiff reported that he was "doing well." [R. 380]. He complained of intermittent burning and tingling in his legs. [R. 380]. Examination notes indicate he was "not feeling tired or poorly." [R. 380]. A final treatment note from March 10, 2011 indicates that Plaintiff was experiencing no muscle aches or cramps, no muscle spasms, and no sleep disturbances. [R. 372]. His musculoskeletal system was "normal." [R. 373].

**2. Agency Consultative Exams and Assessments**

On August 19, 2008, Malaika Hakima, M.D. performed a consultative examination. [R. 309-312]. Plaintiff's chief complaints included: back pain, diabetes, and high blood pressure. [R. 309]. Plaintiff reported that since being laid off in January 2008, he had been unable to take his medication regularly. He reported trying to mow the grass and do the dishes but stated he takes his time with these activities because they aggravate his back pain. [R. 309].

During the examination, Plaintiff's gait was mildly guarded due to his obesity. [R. 310]. He could easily turn door knobs and open doors. Dr. Hakima noted that Plaintiff had a negative seated straight leg raise. She also noted that Plaintiff had some trigger point tenderness in the paravertebral lumbar area. [R. 311].

On December 9, 2009, Jane Teschner, M.D. performed a second consultative exam. [R. 337-344]. Plaintiff's chief complaints included: back pain, pinched nerve, left leg/hip numbness, easy bruising, and leg swelling. [R. 337]. Dr. Teschner noted that Plaintiff did not receive a referral to a neurosurgeon or orthopedist. Plaintiff reported that surgery was never discussed or recommended as a treatment option. Plaintiff stated that his primary care doctor had prescribed Lortab but after he was laid off and had no insurance he could not see his regular physician. He reported seeing

another doctor who refused to prescribe opiates. Plaintiff then stated that he would sometimes "sneak some" Lortab from his wife. [R. 338]. Plaintiff reported various restrictions in his activities of daily living due to his pain. Upon examination, Plaintiff demonstrated a full range of motion in all joints except both shoulders. [R. 340]. Dr. Teschner noted that Plaintiff had a normal cervical, thoracic spine. She did note decreased ROM L-S spine and tenderness to palpation L-S spine at paraspinous muscles and some tenderness to palpation at center of spine along lumbar vertebrae. [R. 340]. Straight leg raises were negative bilaterally. Plaintiff was unable to perform a toe-touch-squat or a tiptoe-heel-walk-heel-toe-walk. [R. 340]. Plaintiff showed no sensory defects and his motor strength, grips, and pinches were 5/5. [R. 340].

Dr. Treschner opined that Plaintiff's primary limiting medical issue is low back pain. [R. 341]. Dr. Treschner stated that Plaintiff's degenerative disc disease was brought on and exacerbated by morbid obesity. [R. 341-342]. Although Plaintiff reported having a pinched nerve, Dr. Treschner found no evidence of a pinched nerve upon examination or a review of Plaintiff's medical records. She opined that his back pain caused a mild-moderate impairment that would not improve or cease progressing without 100 pounds of weight loss. [R. 342]. According to Dr. Treschner, Plaintiff's other medical conditions did not limit his ability to function as a responsible, capable adult. [R. 342].

On January 19, 2010, state agency medical consultant Robert H. Heilpern, M.D. completed a Physical RFC Assessment. [R. 359-366]. Based upon Plaintiff's primary diagnosis of degenerative disc disease and secondary diagnoses of diabetes and hypertension, Dr. Heilpern opined that Plaintiff has the following exertional limitations: he can occasionally lift and/or carry up to 20 pounds; he can frequently lift and/or carry up to 10 pounds; he can stand and/or walk with normal breaks for a total of six hours in an 8-hour work day; he can sit (with normal breaks) for a total of

six hours in an 8-hour work day; and, he has no limitations for pushing and/or pulling, including operation of hand or foot controls. [R. 360]. Regarding postural limitations, Dr. Heilpern opined that Plaintiff can frequently climb ramps or stairs but should never climb ladders, ropes or scaffolds. He further noted that Plaintiff can occasionally balance, stoop, kneel, crouch, and crawl. [R. 361]. Dr. Heilpern opined that Plaintiff was limited in his ability to reach and he was not limited in handling, fingering, or feeling. [R. 362]. Dr. Heilpern found no visual or communicative limitations. Regarding environmental limitations, Dr. Heilpern opined that Plaintiff should avoid concentrated exposure to fumes, odors, and gases, and that he should avoid work with hazardous machinery and unprotected heights. [R. 363].

## II. ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. (*Id.*). Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared

disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. (*Id.*). If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the instant case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 3, 2008, the alleged onset date.[3] [R. 18]. The ALJ then concluded that Plaintiff has the following severe impairments: degenerative disc disease, diabetes mellitus, essential hypertension, and obesity. [R. 18]. The ALJ also determined that Plaintiff has the following nonsevere impairments: bursitis, gastroesophageal reflux disease, obstructive sleep apnea, a history of H. Pylori infection, and depression. [R. 18-19]. Nonetheless, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one the listed

[3] The ALJ amended the alleged onset date to September 4, 2008 during the hearing. [R. 33]. *See supra* note 2.

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 18]. The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations: Plaintiff can lift, carry, push, and pull up to 20 pounds occasionally and up to 10 pounds frequently; Plaintiff can stand and walk, with normal breaks, for six hours total in an regular 8-hour work day and can sit, with normal breaks for six hours in a regular 8-hour work day; Plaintiff can occasionally balance, stoop, kneel, crouch, or crawl; Plaintiff should avoid climbing ladders, ropes, or scaffolds; Plaintiff should avoid exposure to unprotected heights and dangerous machinery; and, Plaintiff should avoid concentrated exposure to dust, fumes, gas, noxious odors, and other respiratory irritants. [R. 20]. Next, the ALJ concluded that Plaintiff is unable to perform any past relevant work but that considering his age, education, work experience, and RFC, jobs existed in the national economy that Plaintiff could perform, including: small product assembler; product inspector; and, packer. [R. 24]. Accordingly, the ALJ determined that Plaintiff is not disabled, as that term is defined in the Act. [R. 24].

## III. Plaintiff's Argument for Reversal

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that improper legal standards were applied because the ALJ failed to pose a hypothetical to the VE that included a need for alternation or a sit/stand option. [Pl.'s Mem. 10-14].

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§

405(g) and 1383(c)(3) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V. Discussion**

Plaintiff argues that the hypothetical posed by the ALJ was incomplete because the ALJ did not include a sit/stand option. The Commissioner responds that the medical evidence did not support the need for a sit/stand option and therefore, the hypothetical was appropriate and the ALJ's decision was based upon substantial evidence. After thorough review, the court finds no error with the ALJ"s hypothetical.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical which comprises all of the claimant's impairments." *Wilson v. Barnhart,* 284

F.3d 1219, 1227 (11th Cir. 2002) (citing *Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir. 1999)). However, an ALJ is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004). Therefore, the court must determine whether susbstantial evidence supports the ALJ's decision that Plaintiff did not require a sit/stand option. If so, the ALJ was not required to include this restriction in his hypothetical.

Here, the ALJ stated that Plaintiff's obesity, in combination with [his] other conditions, moderately reduce his ability to stand and walk, to stoop or bend, and to maintain postures without the need for alternation." [R. 22]. Thus, according to the ALJ, a reduction to less than light work "with further appropriate work restrictions" was warranted. [R. 22]. And, the ALJ noted that these limitations were accounted for in the RFC determination. [R. 22]. According to Plaintiff, the ALJ's statement that his impairments moderately reduced his ability to maintain postures without need for alteration required the inclusion of a sit/stand option in his hypothetical to the VE. The court concludes that Plaintiff confuses a sit/stand option with the ALJ's finding that his impairments moderately reduced his ability to maintain postures without need for alteration. In support of his argument, Plaintiff relies upon a portion of Social Security Ruling 83-12 stating that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12, 1983 WL 31253, at *4 (S.S.A.) (1983). However, the very next sentence of the ruling provides: "[i]n cases of *unusual limitation* of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base." *Id.* (emphasis added). Social Security Ruling 83-12 distinguishes between those persons who can adjust to any need to vary sitting and standing by doing so at breaks, from those not functionally capable of either prolonged sitting

or walking contemplated by most light jobs, which require a sit/stand option. *See id.* ("Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work."). A close examination of the ALJ's decision and the evidence of record demonstrates that the ALJ correctly found that Plaintiff retained a reduced ability to maintain postures without the need for alternation but that normal breaks would accommodate those limitations. Further, the record does not support a determination that Plaintiff retained limitations requiring a sit/stand option.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997) (citing 20 C.F.R. § 404.1545(a)). In evaluating the claimant's RFC, the ALJ must give substantial weight to the opinions of a treating physician unless the ALJ identifies "good cause" for not doing so. *Id.* The ALJ is not required to give the same amount of weight to the opinions of a non-examining physician. *Broughton v. Heckler,* 776 F.2d 960, 961–62 (11th Cir.1985). State agency consultants are experts in disability programs and the weight assigned to such an opinion depends upon whether the opinion is supported by medical findings and consistent with the record as a whole. 20 C.F.R. §§ 404.1527(c)(3), (e)(2); SSR 96-6p, 1996 WL 374189, at *2 (S.S.A.) (1996); *Crawford*, 363 F.3d at 1159-60. The ALJ is required "to state with particularity weight he gave the different medical opinions." *Sharfarz v. Bowen,* 825 F.2d 278 (11th Cir.1987).

The evidence in the record demonstrates that the ALJ properly concluded Plaintiff did not require a sit/stand option. After a review of the medical evidence, the ALJ noted that "no treating source ha[d] stated or implied that [Plaintiff] was disabled or incapable of performing all work

related activities at all exertional levels."[4] [R. 22]. The ALJ discussed the findings of Dr. Teschner's and Dr. Heilpern's consultative examinations. The ALJ accorded "substantial weight" to their conclusions noting that their findings were uncontradicted by other evidence of record and that they had access to Plaintiff's entire medical record. [R. 22]. The ALJ also discussed the findings of Dr. Hakima. [R. 22]. The ALJ properly noted that she did not provide an opinion concerning Plaintiff's functional limitations but that her assessment was helpful in determining the full scope of his impairments. [R. 22]. Thus, the ALJ accorded "some weight" to Dr. Hakima's findings. [R. 22]. None of these physicians indicated that Plaintiff required a sit/stand option. Notably, as part of his Physical RFC Assessment, which indicated that Plaintiff could both stand and/or walk and sit for six hours in an 8-hour work day, Dr. Heilpern did not check the box indicating that Plaintiff must periodically alternate between sitting and standing to relieve pain or discomfort. [R. 360]. Because the ALJ accorded proper weight to this conclusion and the other opinion evidence of record, the court finds substantial evidence supports the ALJ's conclusion that Plaintiff does not require a sit/stand option. Therefore, the court concludes that the ALJ did not have to include this limitation in his hypotheticals. *See Crawford,* 363 F.3d at 1161. Accordingly, the Commissioner's decision is due to be affirmed.

---

[4] The court can infer that the ALJ concluded that no treating source indicated the need for a sit/stand option or made clinical findings suggesting that such an option was necessary. The court's own review of the entire record finds no such statement from a treating source. The court also finds no opinion form a treating source indicating that Plaintiff's impairments caused any limitation in his ability to perform work related activities at any level. "It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. §§ 404.1512(c); 416.912(c)." *Bear v. Astrue*, 838 F. Supp. 2d 1267, 1273 (M.D. Fla. 2011). Because no treating source had indicated Plaintiff's impairments rendered him incapable of performing work related activities, the ALJ then considered other evidence suggesting Plaintiff was limited to some degree. And, as explained more thoroughly in the memorandum opinion text that follows, the ALJ properly considered this remaining medical evidence and explained the weight he accorded each opinion in making his final RFC determination.

## VI. Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that proper legal standards were applied. Therefore, the Commissioner's decision is due to be affirmed. A separate order in accordance with this memorandum opinion will be entered.

**DONE**, this 30th day of September, 2013.

Sharon Lovelace Blackburn

SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE